Tiffany Ma, Esq.
Young & Ma LLP
575 Lexington Avenue, 4th Floor
New York, NY 10022
(212) 971-9773

Michael P. Pappas, Esq.
Michael P. Pappas Law Firm, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 770-7890

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

VASILIKI BOGDANI,

               *Plaintiff,*

     v.

RUBY HAS LLC, RAFAEL ZAKINOV, and LLANEY
DUMLAO,

              *Defendants.*

------------------------------------------------------------------------×

**Case No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Vasiliki Bogdani, by her attorneys, Young & Ma LLP and Michael P. Pappas

Law Firm, P.C., complains of Defendants as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff Vasiliki "Vaso" Bogdani ("Plaintiff" or "Ms. Bogdani") seeks damages

and costs against Defendants Ruby Has LLC ("Ruby Has" or the "Company"), Rafael Zakinov

("Zakinov") and Llaney Dumlao ("Dumlao") (collectively, "Defendants") for: (i) discriminating

against her, harassing her, and wrongfully terminating her employment based on race, national

origin, gender, and disability; (ii) perpetuating pervasive race and gender stereotypes; and (iii)

failing to accommodate her, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.      Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues, as well as to her comparative co-workers who are not recent immigrants, did not speak with an accent, and/or did not suffer from a disability, who provide the same or similar work and have the same or similar credentials and experience as Plaintiff, and for retaliating against her for exercising her rights, in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) *et seq.*, N.Y. Labor Law ("NYLL") § 194, Title VII, the NYSHRL, and the NYCHRL.

## JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII, the ADA, and the EPA.

4.      Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about March 15, 2021.

5.      Plaintiff requested a right to sue from the EEOC on or about April 12, 2021.  The EEOC issued the right to sue shortly on or about April 14, 2021.

6.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and NYLL claims as they are so related to the Title VII, ADA, and EPA claims that they form part of the same case or controversy.

7.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

8.     Plaintiff, at all times relevant hereto, was and is a resident of New Jersey and worked at Defendants' New York office.

9.     Upon information and belief, at all times relevant hereto, Defendant Ruby Has was and is a New York corporation, with offices located at 5 Inez Drive, Bay Shore, New York 11706.

10.     Upon information and belief, Defendant Rafael Zakinov is an individual residing in New York and works in the New York office of the Company.

11.     Upon information and belief, Defendant Llaney Dumlao is an individual residing in New York and works in the New York office of the Company.

**STATEMENT OF MATERIAL FACTS**

12.     Founded in 2011 and with six locations, Ruby Has is a fulfillment specialist and third party logistics (3PL) provider serving medium and enterprise-level businesses with automation technology, API integration, pick and pack, and bicoastal fulfillment warehouse solutions. The Company is headquartered in New York and has locations in New Jersey, Nevada, California, Kentucky, and Toronto, with between 501-1,000 employees.

13.     Plaintiff Vasiliki Bogdani, a female of Greek descent, immigrated to the United States from Greece in 2017. Ms. Bogdani is fluent in Greek and English. She has a degree in English from the University of Cambridge.

14.     Ms. Bogdani suffers from stomach ulcers, which intensified with stress from work.

15.     Ms. Bogdani has over 20 years of experience in developing successful ERP and CRM systems and products in various industries, including manufacturing, logistics, 3PL, and retail. With proficiency in ERP-CRM/Sales Force Systems, Waterfall & Agile Methodology, operational management, data warehouse management, commercial operations, implementing policies, integration management, process improvement, resource management, risk management, Microsoft Office, business systems analysis, SQL Database Server, Stakeholder Management, Sales & Distribution, managing project quality, logistics management, relationship management, contract administration, Microsoft Office package, system development life cycle, ERP/OMS/WMS Management, performance enhancements, cost control and financial acumen, and human resources management,  Ms. Bogdani was the founder and proprietor of her own company from 2012 to 2019, managing large scale client programs focusing on business growth, technology advancement, and process improvement.  Highly-experienced in the industry, Ms. Bogdani serviced two significant logistics companies, has worked internationally, and has cross cultural sales/customer relations capacity.

16.     Ms. Bogdani joined Ruby Has in June 2019 as a Manager/Client On-Boarding and Business Solutions employee. She generated revenue by servicing customers and overseeing the lifecycle and all aspects of client health, including onboarding, value realization and renewal, handling customer escalations, and customer relations issues. She was introduced to Ruby Has through Jessica Burgess ("Burgess"), the Director of Sales, who knew of her skills from another business. Burgess shared her resume with Steve Martin ("Martin"), and Ms. Bogdani was invited to interview, including with Defendant Zakinov, the CEO. Although she had a competing offer for a project manager position reporting to a global CEO, Ms. Bogdani turned it down because she wanted to work in Ruby Has warehouse management.

17.     An American White male employee, Chris Gross ("Gross"), had been handling Ms. Bogdani's work before she was hired, and did not have as much expertise as her even if he had been with the company longer. Gross was paid more than Ms. Bogdani for the same work, even though he was lower performing and less-experienced.

18.     When Ms. Bogdani joined the Company, she reported to the Director of Business Solutions, Wei Tung ("Tung"). Ms. Bogdani was speaking to clients on her own within two months, showing her clear competency in communication and client relations. Tung acknowledged that customers can be rude and discriminatory concerning accents. As a minority male manager himself, Tung focused on Vaso's substantive capacity and applauded her work ethic of working 12 hours a day, nights, and weekends with no additional pay. Within three months, Ms. Bogdani was given a raise from $52,000 to $60,000 per year. Clearly, such a raise would not have been provided if Ms. Bogdani had not been performing well during her short time with the Company.

19.     Simultaneously, Defendant Dumlao, who is Tung's manager (Director of Customer Service, later promoted to Senior Director), discriminated against Ms. Bogdani from the start. Dumlao looked at Ms. Bogdani and did not like her being put together in appearance and presentable in the office. She pointed out Ms. Bogdani's Gucci sunglasses and her clothing. Progressively, she escalated to calling Ms. Bogdani "***Madame Vaso***" on the phone, in person, and then eventually to clients.  She said this in front of Defendant Zakinov and the Director of Pricing and Carrier Services, Chris Bosowski. This was also witnessed by several parties in January 2020 at the Company's warehouse in Las Vegas.

20.     Ms. Bogdani objected to being called a "***Madame***". Defendant Dumlao's tone when she called her this term was degrading, derogatory, racist, sexist, sexually demeaning, and bullying. It was clear she was calling Ms. Bogdani a prostitute in the workplace and demeaning

her substantive qualifications. Given Ms. Bogdani's accent and appearance, it was also a race/national origin stereotype as well as gender stereotype. When Ms. Bogdani objected, CEO Defendant Zakinov shockingly suggested Ms. Bogdani should accept this treatment in the workplace, saying, "***But it means you are the boss of the house***!!!" This treatment caused much emotional distress to Ms. Bogdani and exacerbated her ulcers, which are caused by stress.

21.     Even against this offensive and degrading behavior in violation of all federal, state, and city laws concerning employment, Defendant Dumlao was promoted to Senior Director by Christmas 2019. She then started complaining about Ms. Bogdani's accent. Although Ms. Bogdani only started to physically work in the United States three years ago, she has a degree in English from the University of Cambridge, and the substance of her English is not a problem; she merely speaks with an accent. However, Defendant Dumlao claimed clients could not understand Ms. Bogdani even though she was communicating well with a great personality for sales and customer relations. This was previously acknowledged by Tung, who gave her a raise. In any case, if the Company had a true problem with a foreigner's usage of English, then it should accommodate by paying for a course or for coaching, which it never did. Ruby Has simply continued to employ and tolerate managers who engage in open discrimination and harassment in the workplace.

22.     As Defendant Zakinov joined with Borowski Martin and Defendant Dumlao in making fun of Ms. Bogdani's accent since Fall 2019, Ms. Bogdani often responded, "that's funny because there are many different accents in this country and in this company," making clear that New York legislature and culture had no problems with its melting pot and prides itself for having great cultural diversity and many accents. In fact, Burgess mentioned that she herself has an accent from the South.  However, the Company clearly accepts different *American* accents but picks on foreign accents.

23.     By March 2020, the Company went through a merger, as a result of which the number of clients increased by over 400. Ms. Bogdani went from onboarding one company a week to an average of three companies a day without sufficient support. She also had to do training, coordination with teams, and every aspect of servicing new clients.  She repeatedly asked Tung for help.

24.     Previously, Ms. Bogdani had been able to do two internal calls a day with the support team as well as with members of the onboarding team. This was an internal requirement made solely by Defendant Dumlao. However, it simply did not fit with Ms. Bogdani's schedule after the merger. The VP of Customer Success, Nicholas Curattalo ("Curattalo"), even agreed Dumlao's calls were not a high priority. These were calls mainly for the new members, and it was not essential for Ms. Bogdani to attend (in fact, her contributions were not welcomed when she did attend). Therefore, Ms. Bogdani tended to higher priority work. Nevertheless, the Company later made pretextual performance remarks about this.

25.     Gross, the onboarding manager, was supposed to report to Ms. Bogdani since November 27, 2019. However, senior management could not have a White male report to Ms. Bogdani. Due to this discrimination, Gross was taken away to the billing department on purpose in order to undermine and sabotage Ms. Bogdani. Ms. Bogdani continued to ask for help, including in an email to Defendant Zakinov in April 2020.

26.     Nevertheless, Ms. Bogdani's substantive work was good and productive during this time. Defendant Zakinov frequently said clients like Frey are happy with Ms. Bogdani. Zakinov called Ms. Bogdani many Saturdays and Sundays with Curattalo to discuss the status of projects on each of the larger accounts she onboarded. She had excellent relationships with Vincero Watches (Anthony Tarataro), Hawthorne (Aki Terasaki), Bonafide, Leif Frey, Coco Kind, and

others. She was also able to work successfully with Matt Butler in NJ Facilities and Franklin Fuentes in New York operations. The Director of Client Success Kayle Hancock ("Hancock") and VP of Marketing Claire Bretzke both respected Ms. Bogdani's work.

27.     As the  nature of Ms. Bogdani's work was rushed service when a new customer comes on board, DBV Distribution Inc. was no exception. Sales representative Brittany Kinser ("Kinser") wanted Ms. Bogdani to move forward as soon as possible with DBV Distribution and Defendant Zakinov was also aware of this. Zakinov named a new facility for this order and Ms. Bogdani communicated with that facility in Las Vegas, which was unresponsive. The shipment had to be received and ultimately the facility was not prepared. Kinser was not blamed for the rush and Zakinov was not blamed for using a new facility. However, because Ms. Bogdani is a foreigner and a woman (and Zakinov and senior management had already made fun of her), Zakinov immediately blamed any mistakes on Ms. Bogdani, saying, "You are Vaso Bogdani and you know everything but it's not like that ***HONEY! Do you understand?"*** Zakinov was clearly telling Ms. Bogdani that she is a nobody as a foreign woman. After this conversation, the two never spoke again.

28.     Ms. Bogdani reported the incident to Tung and Curattalo, and complained that Defendant Zakinov had used gender-motivated terms. Tung assured her that she had handled everything responsibly. Ms. Bogdani also reported that she did not appreciate being called "honey" in a demeaning way around July 2020. Knowing that Ms. Bogdani was absolutely correct on the law and best practices, Curattalo suggested that she deserved a promotion and raise during this conversation. However, senior management never corrected its discriminatory and retaliatory views about Ms. Bogdani, and she never received a promotion or raise. Instead, the Company terminated her shortly after these incidents.

29.     In late August 2019, Kinser again wanted to sign up another client, Stori. Ms. Bogdani needed more information from the client to start integration and set up the account. She was circumvented when her boss Tung went around her to speak directly to Danny Vance ("Vance"), who was clearly a racist and sexist client. Kinser admitted the issue had to do with Ms. Bogdani's accent in an email to Ms. Bogdani, Tung, and Vance on August 31, 2019: "Trey said you were having a hard time understanding Vaso due to dialect to I have asked Wei our Director of Solutions to be on your calls moving forward." The accent was just a convenient excuse to abuse a foreign woman. There was absolutely no problem with the communication, and Vance simply did not want to answer questions from Ruby Has at all. Tung experienced the same thing when he accompanied Ms. Bogdani on the next call with Vance. Only when the owner of Stori came on the phone did they get an answer. Therefore, there was no reason for Ruby Has to jeopardize Ms. Bogdani by automatically siding with whatever customer makes racist accusations to avoid their own obligations.

30.     After Ms. Bogdani was scapegoated in this incident, she spoke up about being wrongfully blamed, and, once again, because she is a foreigner female employee not expected to complain, she was accused of having a bad attitude. However, Ms. Bogdani was simply objecting to discriminatory treatment. Her 24 years of experience in customer services in software implementation, sales, and support was not being respected. Matt Carpentieri complained about her "attitude" when it was he who had forgotten to share shipping methods and rates with clients, causing the problem. It became easy in the department to simply blame Ms. Bogdani because she most recently immigrated to the United States and spoke with an accent. Employees without foreign accents (i.e., Burgess and Hancock) did not experience any of this in the department.

31.     Tung consistently praised Ms. Bogdani's performance and fought back with management saying, "She has a Greek accent because she is Greek but there is no one else that can do her job".

32.     On September 18-21, 2020, Ms. Bogdani was absent from work due to stomach ulcers. The Company terminated her the next day at 12:30 pm. She had sent responsive text messages to Defendant Dumlao on Friday, September 18, 2020 at 9:59 pm, saying, **"*I am in bed Llaney… I can't check again… my stomach is swollen I can't even go to the bathroom*"**. That Monday, September 21, 2020, Ms. Bogdani was again sick at Jefferson Hospital about to enter the emergency room, for which she would have a note requesting time off to September 28, 2020. However, Ms. Bogdani was told of her termination that day.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Race, National Origin, and Gender Discrimination and Hostile Work Environment
### in Violation of Title VII
### (Against Defendant Ruby Has)

33.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

34.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) *et seq*., for relief based upon the unlawful employment practices of Ruby Has.

35.     Ruby Has was and is Plaintiff's "employer" within the meaning of Title VII.

36.     Plaintiff is a member of protected classes within the meaning of Title VII, in that she was and is a female, Greek, of Greek descent and with a Greek accent. At all relevant times, she was an "employee" of Ruby Has within the meaning of Title VII.

37.     At all times, the Company was aware of Plaintiff's race, national origin, gender, and associated characteristics.

38.     By the conduct alleged in this Complaint, Ruby Has discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of her employment because of her race, national origin, and gender.

39.     Plaintiff was subjected to a pervasive hostile work environment by the Defendant's conduct.

40.     The Company engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's race, national origin, and gender in the manner described in the Statement of Material Facts.

41.     Plaintiff suffered adverse employment actions and damage by the Defendants due to her race, national origin, and gender and the hostile work environment that Plaintiff suffered at Ruby Has because of her race, national origin, and gender.

42.     As a direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income and damage to reputation. Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

43.     As a further direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

44.     Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Expedia under Title VII.

**SECOND CAUSE OF ACTION**
**Race, National Origin, and Gender Discrimination and Hostile Work Environment**
**in Violation of NYSHRL**
**(Against All Defendants)**

45.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

46.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and reference is made to the NYSHRL in its entirety.

47.     At all relevant times, the Company was and is Plaintiff's "employer" within the meaning of the NYSHRL.

48.     At all relevant times, Plaintiff was and is an "employee" of Ruby Has within the meaning of the NYSHRL.

49.     At all times, Defendants were aware of Plaintiff's race, national origin, gender, and associated characteristics.

50.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's race, national origin, and gender in the manner described in the Statement of Material Facts.

51.     Plaintiff was severely limited in her career by Defendants' unlawful conduct due to her race, national origin, and gender.

52.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, national origin, and gender as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing,

participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

53.     Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

54.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

55.     Plaintiff's damages include, inter alia, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

56.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**THIRD CAUSE OF ACTION**
**Race, National Origin, and Gender Discrimination and Hostile Work Environment**
**in Violation of NYCHRL**
**(Against All Defendants)**

57.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

58.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

59.     At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

60.     At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

61.     At all times, Defendants were aware of Plaintiff's race, national origin, gender, and associated characteristics.

62.     Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's race national origin, and gender in the manner described in the Statement of Material Facts.

63.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

64.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

65.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

66.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

67.     As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

68.     Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**FOURTH CAUSE OF ACTION**
**Disability Discrimination and Failure to Provide Reasonable**
**Accommodation in Violation of the ADA (Against Defendant Ruby Has)**
**and the NYSHRL and NYCHRL (Against All Defendants)**

69.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

70.     The ADA, NYSHRL and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with disabilities such as Plaintiff, but Defendants failed to do so for Plaintiff.

71.     Defendants failed to provide simple reasonable accommodations that would require little to no business burden for Defendants for Plaintiff's disabilities, by refusing to engage in any meaningful mandatory interactive process and cooperative dialogue in good faith to provide reasonable accommodations for her disabilities. Instead, Defendants terminated Plaintiff's employment, in whole or in part, due to her disability.

72.     As such, Defendants have violated the ADA, NYSHRL and NYCHRL.

73.     Additionally, Defendants failed to engage in a meaningful cooperative dialogue with Plaintiff after obtaining notice of Plaintiff's medical need for reasonable accommodations as alleged in the Statement of Material Facts, and failed to provide a credible written explanation as to why these accommodations would not possible for a company the size of Defendant Ruby Has and for the experience and role Plaintiff had.

74.    As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

75.    Defendants' discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights.  As such, Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**Pay Discrimination**
**in Violation of the EPA**
**(Against All Defendants)**

76.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

77.    At all times relevant herein, Plaintiff was and is a "Person" as defined under 29 U.S.C. § 203(a).

78.    At all times relevant herein, Plaintiff was and is an "Employee" as defined under 29 U.S.C. § 203(e)(1).

79.    At all times relevant herein, Defendant Ruby Has is and was an "Employer" as defined under 29 U.S.C. § 203(d).

80.    At all times relevant herein, Defendants Zakinov and Dumlao were and are "Employers" as defined under 29 U.S.C. § 203(d). They had operational control over Plaintiff, controlled significant functions of the business, determined salary and made hiring and promotion decisions, and controlled the terms and conditions of employment of Plaintiff.

81.    Defendants discriminated against Plaintiff within the meaning of the Equal Pay Act by providing her with lower pay and other less favorable terms and conditions of employment than similarly situated male colleagues on the basis of her sex even though Plaintiff performed equal

16

and/or more work requiring equal and/or more skill, effort, and responsibility as her similarly situated male counterparts.

82.     Plaintiff and similarly situated male colleagues all performed equal or substantially equivalent job duties and functions.

83.     Plaintiff and similarly situated male colleagues all performed equal work that required equal skill, effort and responsibility, and that was performed under similar working conditions.

84.     Defendants discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denial of raises and bonuses and other compensation, discriminatory denial of promotions and/or titles, and other forms of discrimination in compensation in violation of the Equal Pay Act.

85.     The differential in pay between Plaintiff and her male colleagues was not due to seniority, merit, quantity or quality of production, or a factor other than sex.  Rather, the differential in pay was due to Plaintiff's sex.

86.     Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender in violation of the Equal Pay Act.

87.     Defendants' actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the EPA.

88.     As a result, Plaintiff is entitled to liquidated damages.

89.     Defendants' foregoing conduct also constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

90.     As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and lost earning capacity and loss of confidence.

91.     Plaintiff is entitled to recover monetary damages and other damages and relief under 29 U.S.C. § 206(d) *et seq.* and 29 U.S.C. §255(a) *et seq.*

## SIXTH CAUSE OF ACTION
### Violation of the New York State Labor Law § 194
### (Against All Defendants)

92.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

93.     Plaintiff was an "employee" of Ruby Has as defined under N.Y. Lab. Law § 190(2).

94.     Defendants were "employers" as defined under N.Y. Lab. Law § 190(3).

95.     Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's race, national origin, and gender.

96.     Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bona fide factor, but rather is based on Plaintiff's status in protected classes.

97.     The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Material Facts.

98.     As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of Title VII and ADA (Against Ruby Has) and
### NYSHRL and NYCHRL (Against All Defendants)

99.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

100.     Defendant Ruby Has violated Title VII and the ADA, and Defendants Ruby Has, Zakinov, and Dumlao violated the NYSHRL and NYCHRL, because they knowingly retaliated against Plaintiff for her complaints in the manner described in the Statement of Material Facts.

101.     Defendants were aware that Plaintiff engaged in the protected activities alleged above.

102.     Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff in the manner described in the Statement of Facts.

103.     The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

104.     As a direct and proximate result of the unlawful retaliation by, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

## **JURY DEMAND**

105.   Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendants as follows:

A.     Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated:  (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; (ii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*; (iii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; (iv) Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*; (v) New York Labor Law §194; (vi) the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 *et seq.*; and (vii) that Defendants' foregoing acts of discrimination, harassment and retaliation against Plaintiff were intentional and willful.

B.      Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C.      Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest;

D.      Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E.      Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.

Dated: New York, New York
        July 1, 2021

Respectfully submitted,


By: ___*s/Tiffany Ma*_____
        Tiffany Ma, Esq.
        Young & Ma LLP
        575 Lexington Avenue, 4th Floor
        New York, NY 10022
        T: (212) 971-9773
        F: (212) 600-2301
        tma@youngandma.com


By: ___*s/Michael Pappas*_____
        Michael P. Pappas, Esq.
        Michael P. Pappas Law Firm, P.C.
        3 Columbus Circle, 15th Floor
        New York, New York 10019
        T: (646) 770-7890
        F: (646) 417-6688
        michael@pappaslawfirm.com